UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
THOMAS ANTHONY SANTAGATA, JR.,

               Plaintiff,

          - against -

POLICE OFFICER EDGARDO DIAZ and
POLICE OFFICER RYAN MCAVOY,

               Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**

17-CV-3053 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

     Plaintiff Thomas Anthony Santagata, proceeding *pro se*, brings this action, pursuant to 42

U.S.C. § 1983, against Defendants Police Officers Edgardo Diaz and Ryan McAvoy, alleging false

arrest, unlawful search, and malicious prosecution.  Currently before the Court is Defendants'

motion for summary judgment.  For the reasons stated below, Defendants' motion is granted as to

all of Plaintiff's claims, except his unlawful search claim against Defendant McAvoy, which will

proceed to trial.

## BACKGROUND

### I.     Plaintiff's Failure to Provide a Compliant 56.1 Statement

     The Eastern District of New York's Local Rule 56.1(b) requires that

> [t]he papers opposing a motion for summary judgment . . . include a
> correspondingly numbered paragraph responding to each numbered paragraph in
> the statement of the moving party, and if necessary, additional paragraphs
> containing a separate, short and concise statement of additional material facts as to
> which it is contended that there exists a genuine issue to be tried.

E.D.N.Y. Local Rule 56.1(b).  "*Pro se* litigants who receive proper notice pursuant to Local Civil

Rule 56.2 are not excused from satisfying their obligations under Local Civil Rule 56.1." *Cain v.*

*Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016) (citation omitted), *aff'd sub nom. Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8 (2d Cir. 2018).

Here, though Defendants provided notice under Local Rule 56.2 (*see* Notice, Dkt. 55), Plaintiff did not provide the required 56.1 Statement. Defendants therefore ask that the Court deem the facts contained in Defendants' 56.1 Statement admitted. (Defendants' Reply ("Defs.' Reply"), Dkt. 58, at 2.) The Court declines to do so.

As the Second Circuit has advised:

> A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules. Thus, we have previously indicated, and now hold, that while a court is not required to consider what the parties fail to point out in their Local 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citations omitted); *cf. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). Although Plaintiff has failed to comply with Local Rule 56.1(b), he did provide his own factual account of the case. (*See generally* Plaintiff's Brief ("Pl.'s Br."), Dkt. 57.) Given Plaintiff's *pro se* status, the Court will "examine the record to determine whether there are any triable issues of material fact, notwithstanding the fact that [Plaintiff] did not follow Local Civil Rule 56.1." *Cain*, 182 F. Supp. 3d at 63; *see Thigpen v. Bd. of Trs. of Local 807 Labor-Mgmt. Pension Fund*, No. 18-CV-162 (PKC) (LB), 2019 WL 4756029, at *1 (E.D.N.Y. Sept. 29, 2019) (declining to deem defendants' 56.1 statement admitted when plaintiff "provide[d] her own factual account of the case and attached numerous, non-duplicative exhibits"); *see also Holtz*, 258 F.3d at 73 ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court

rules." (internal citations omitted)). "To the extent [Plaintiff's] submission contains facts based on personal knowledge or otherwise admissible evidence, those facts will be considered in conjunction with the instant motion." *Genao v. Avon Salon & Spa*, No. 06-CV-3667 (RWS), 2008 WL 190605, at *1 n.1 (S.D.N.Y. Jan. 16, 2008).

## II. Relevant Facts[1]

### A. Plaintiff's November 6, 2014 Arrest

On November 6, 2014, Plaintiff's grandmother, Lillian McNee, called 911. (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 52, ¶ 1.) She alleged that Plaintiff had broken the front door to her residence[2] in Staten Island, New York (the "Residence"). (*Id.* ¶ 2.) Defendant Diaz and another officer arrived as Plaintiff was sitting in his car in the driveway at the Residence. (*Id.* ¶ 3; Pl.'s Depo., Dkt. 53-2, at 129:12–17, 132:9–133:10.) The officers handcuffed and searched Plaintiff. (Defs.' 56.1, Dkt. 52, ¶ 4.) A knife was recovered from Plaintiff's pants pocket. (*Id.* ¶ 5.) As Plaintiff was being placed into the police vehicle, Defendant Diaz observed Plaintiff

---

[1] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement or *pro se* Plaintiff's factual submission denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statements or Plaintiff's submission incorporates by reference the documents cited therein, if any. Where relevant, however, the Court may cite directly to the underlying document. The Court has deemed facts averred in a party's 56.1 statement or factual submission to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement or factual submission "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party], without specifically controverting those facts[,]" the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

[2] Plaintiff allegedly damaged the screen door. (Plaintiff's Deposition, ("Pl.'s Depo."), Dkt. 53-2, at 137:11–12.)

threatening McNee. (*Id.* ¶ 6.)  Plaintiff was charged with criminal mischief in the fourth degree, criminal possession of a weapon in the fourth degree, attempted criminal mischief in the fourth degree, and harassment in the second degree. (*Id.* ¶ 7.)

### B.    Plaintiff's July 22, 2015 Arrest

On July 21, 2015, Plaintiff had an altercation with Steven and Jack Graziano, who live across the street from the Residence. (*Id.* ¶ 8.)  At the time of the altercation, Plaintiff was carrying a knife. (*Id.* ¶ 9; Pl.'s Depo., Dkt. 53-2, at 164:9–14.)

The next day, July 22, 2015, Plaintiff was in another altercation with the Grazianos. (Defs.' 56.1, Dkt. 52, ¶ 11.)  As a result, numerous 911 calls were made, and police officers, responding to the calls, arrived at the Residence. (*Id.* ¶¶ 11–12.)  Plaintiff locked himself inside the Residence, refusing to let the police officers in. (*Id.* ¶ 14.)  The initial police officers on the scene designated Plaintiff as an emotionally disturbed person ("EDP"). (*Id.* ¶ 15.)  Defendant McAvoy arrived at the scene and spoke with Jack and Steven Graziano, who stated that Plaintiff had menaced them with a knife the day before, July 21, 2015.[3] (*Id.* ¶ 17.)

Plaintiff refused to come out of the Residence for approximately two hours. (*Id.* at ¶ 18.)  Plaintiff yelled to the officers, "If you are telling me I'm not under arrest then I will not go outside. I'll go to the hospital and be evaluated if you let me and the Grazianos all go at the same time to be evaluated." (Pl.'s Depo., Dkt. 53-2, at 160:19–22, 163:9–10.)  Plaintiff was eventually removed from the Residence by police officers and taken to a local hospital. (Defs.' 56.1, Dkt. 52, ¶ 21.)

---

[3] In Plaintiff's deposition testimony, he stated that Jack and Steven Graziano told police officers that he had menaced them with a knife on both July 21 and 22, 2015. (Pl.'s Depo., Dkt. 53-2, at 164:5–8.)  However, Defendant McAvoy's police report does not include any allegations of menacing on July 22, 2015. (Exhibit H, Dkt. 53-8.)

Plaintiff was arrested and charged with menacing in the second degree and harassment in the second degree. (*Id.* ¶ 23.)

## III.    Procedural History

On April 12, 2017, Plaintiff commenced this action against the City of New York ("City"), the New York City Police Department ("NYPD"), NYPD Officers Edgardo Diaz and Ryan McAvoy, and the Legal Aid Society, in the United States District Court in the Southern District of New York. (Complaint, Dkt. 2.) By Order dated May 15, 2017, the case was transferred to this Court. (May 15, 2017 Transfer Order, Dkt. 4.) On July 11, 2017, the Court *sua sponte* dismissed Plaintiff's claims as to the City, NYPD, and the Legal Aid Society, but allowed Plaintiff's claims for false arrest, unlawful search, and intentional infliction of emotional distress against Defendants Diaz and McAvoy to proceed. (July 11, 2017 Memorandum and Order, Dkt. 9.) On July 20, 2017, Plaintiff filed a letter motion to amend his complaint, seeking to name Steven Wasserman, a Legal Aid Society attorney, as a defendant. (Plaintiff's letter motion to amend complaint, Dkt. 11.) The Court denied the motion to amend on October 6, 2017. (Oct. 6, 2017 Memorandum and Order, Dkt. 19.) At a pre-motion conference on March 9, 2018, the Court denied Defendants' motion to dismiss on the record, allowing Plaintiff to proceed with his claims against Defendants Diaz and McAvoy for false arrest/false imprisonment, unlawful search, and malicious prosecution. (*See* Mar. 9, 2018 Minute Entry.) Defendants filed their answer on March 23, 2018. (Answer, Dkt. 28.) Parties then proceeded to discovery. (*See* May 22, 2018 Minute Entry, Dkt. 32.) Defendants' motion for summary judgment was fully briefed on April 5, 2019. (*See* Dkts. 51–60.) Plaintiff thereafter filed a second letter motion to amend his complaint, asserting new claims against the City and New York State (Plaintiff's second letter motion to amend complaint, Dkt. 49), which the Court denied on May 17, 2019 (May 17, 2019 Memorandum and Order, Dkt. 61). Plaintiff

filed an interlocutory appeal with respect to the Court's May 17, 2019 Memorandum and Order. (Notice of Interlocutory Appeal, Dkt. 62.) That appeal was dismissed by the Second Circuit for failure to either pay the filing fee or move for *in forma pauperis* status. (Mandate of USCA, Dkt. 63.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial "burden of establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (*per curiam*) (citation omitted). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks, citation, and alterations omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks,

citation, and emphasis omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props.*, *Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Defendants seek summary judgment as to Plaintiff's false arrest, unlawful search, and malicious prosecution claims. Because Plaintiff admits that he has not established a claim for malicious prosecution, the Court considers that claim withdrawn. (*See* Pl.'s Br., Dkt. 57, at 3.)

The Court, therefore, addresses Defendants' motion with respect to Plaintiff's false arrest and unlawful search claims only.

## I. False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." (quoting *Weyant*, 101 F.3d at 852)). "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Jean v. City of New York*, 512 F. App'x 30, 31 (2d Cir. 2013) (summary order) (internal quotation marks and citation omitted). To prevail on a claim of false arrest/false imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted).

"'[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)). As the Second Circuit has explained:

> Although the existence of probable cause must be determined with reference to the facts of each case, in general "probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (brackets omitted) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). The existence of probable cause "must

be determined by reference to the totality of the circumstances." *Id.* (citation omitted).

"[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted); *accord Wieder v. City of New York*, 569 F. App'x 28, 29 (2d Cir. 2014) (summary order) (quoting *Panetta*, 460 F.3d at 395). "Generally speaking, police officers 'are entitled to rely on the victims' allegations that a crime has been committed.'" *Morocho v. New York City*, No. 13-CV-4585 (KPF), 2015 WL 4619517, at *4 (S.D.N.Y. July 31, 2015) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000)).

Defendants argue that there was probable cause to arrest Plaintiff on November 6, 2014 and July 22, 2015. (Defendants' Brief ("Defs.' Br."), Dkt. 54, at 5–8.) The Court agrees.

## A.    Plaintiff's November 6, 2014 Arrest

When Defendant Diaz arrested Plaintiff on November 6, 2014, he had reasonably trustworthy information that Plaintiff had broken the front door of the Residence in violation of N.Y. Penal Law § 145.00.[4] "A person is guilty of criminal mischief in the fourth degree when,

---

[4] Defendants also argue that there was probable cause to arrest Plaintiff for harassment in the second degree because Defendant Diaz personally observed Plaintiff threatening McNee. (Defs.' Br., Dkt. 54, at 7.) However, Plaintiff had already been handcuffed and was being placed into the police vehicle when he allegedly threatened McNee. (Defs.' 56.1, Dkt. 52, ¶¶ 4, 6.) Although "not every use of handcuffs automatically renders a stop an arrest requiring probable cause to satisfy Fourth Amendment reasonableness," *United States v. Bailey*, 743 F.3d 322, 340 (2d Cir. 2014) (citation omitted), the circumstances here make clear that Plaintiff was under arrest when he was handcuffed by Defendant Diaz, *id.* at 340–41 (finding the handcuffing to be an arrest due to the absence of physical threat by the arrestee). "When determining whether probable cause exists courts must consider those facts available to the officer *at the time of the arrest and immediately before it*." *Panetta*, 460 F.3d at 395 (internal quotation marks, emphasis, and citation omitted) (emphasis added). Therefore, in analyzing the defense of probable cause in this case, the Court does not consider Plaintiff's alleged threat to McNee. *Morocho*, 2015 WL 4619517, at *4 (finding plaintiff's statements made after he was handcuffed, and thus arrested for Fourth Amendment purposes, immaterial to the probable cause analysis).

having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . [i]ntentionally damages property of another person[.]" N.Y. Penal Law § 145.00(1). Defendant Diaz was entitled to rely on McNee's allegation, as a victim, that Plaintiff had broken the front door to McNee's residence. (*See* Defs.' 56.1, Dkt. 52, ¶ 2.) Therefore, Defendant Diaz had probable cause to arrest Plaintiff for committing criminal mischief in the fourth degree. *See Johnson v. City of New York*, No. 15-CV-1625 (SMG), 2017 WL 1476139, at *6 (E.D.N.Y. Apr. 24, 2017) (finding that defendant had probable cause to arrest plaintiff for criminal mischief in the fourth degree based on the victim's allegation that plaintiff broke her phone).

Plaintiff argues that his false arrest claim "pertains to the weapon[] possession charge and the attempted criminal mischief." (Pl.'s Br., Dkt. 57, at 1.) He relies on "[t]he fact that [an] officer took the legal knife he found on [Plaintiff's] person and switched it with another knife he illegally found in [Plaintiff's] vehicle," and on "[Defendant Diaz's] lies that [Plaintiff] attempted to kick out a window." (*Id.*) However, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. Because the existence of probable cause to arrest Plaintiff for allegedly breaking McNee's door, in itself, provides "an absolute defense to a false arrest claim," *Dancy*, 843 F.3d at 107 (internal quotation marks and citation omitted), Plaintiff's false arrest claim against Defendant Diaz relating to the November 6, 2014 arrest must be dismissed.

B. **Plaintiff's July 22, 2015 Arrest**

When Defendant McAvoy arrested Plaintiff on July 22, 2015, he had reasonably trustworthy information that Plaintiff had menaced Steven and Jack Graziano with a knife on July

21, 2015, in violation of N.Y. Penal Law §§ 120.14 and 240.26.[5] "A person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon . . . ." N.Y. Penal Law § 120.14(1). "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same[.]" N.Y. Penal Law § 240.26(1). Defendant McAvoy was entitled to rely on Jack Graziano's allegations that Plaintiff menaced him with a knife and threatened to stab him on July 21, 2015. (*See* Defs.' 56.1, Dkt. 52, ¶ 17; Exhibit H, Dkt. 53-8, at ECF[6] 2.) Therefore, Defendant McAvoy had probable cause to arrest Plaintiff for committing criminal mischief in the fourth degree and harassment in the second degree. *See DiStefano v. Sedita*, No. 11-CV-1125 (MKB), 2014 WL 349251, at *6 (E.D.N.Y. Jan. 31, 2014) (finding that probable cause existed where defendant learned from victim that plaintiff threatened victim while "holding an object at his side in his right hand" and found an ink pen in plaintiff's pocket).

Plaintiff argues that Defendant McAvoy did not have probable cause to arrest Plaintiff because Defendant McAvoy had "collected statements from other eye witnesses stating [that Plaintiff] was menaced by the Grazianos." (Pl.'s Br., Dkt. 57, at 1.) First, Plaintiff provides no

---

[5] Plaintiff also testified that Steven and Jack Graziano told police officers that Plaintiff menaced them with a knife on both July 21 and 22, 2015. (Pl.'s Depo., Dkt. 53-2, at 164:4–8.) However, Defendant McAvoy seemed to have only relied on Plaintiff's conduct on July 21, 2015. (*See* Exhibit H, Dkt. 53-8, at ECF 2 ("On 07-21-2015 . . . , the defendant committed the offenses of: 1. P.L. 120.14(1) Menacing in the Second Degree[;] 2. P.L. 240.26(1) Harassment 2nd degree . . . ."); Exhibit L, Dkt. 53-12, at 1 (stating that the "occur date" is July 21, 2015).) Therefore, the Court only considers whether Defendant McAvoy had probable cause to arrest Plaintiff based on the information he had about the July 21, 2015 incident.

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

11

evidence of those purported witness statements. Second, even if witnesses had told Defendant McAvoy that Plaintiff was menaced by the Grazianos, those statements do not contradict the victims' statements and would only inculpate Jack and Steven Graziano without exculpating Plaintiff. Furthermore, to the extent that these statements cast doubt on the Grazianos' veracity, there was evidence corroborating their account.

> A variety of circumstances might corroborate a putative victim's veracity such as (1) the officer's observation of the putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's description of events, (3) the putative victim's identification of the plaintiff by name and physical description, and (4) incriminating statements by the plaintiff.

*DiStefano*, 2014 WL 349251, at *5 (internal quotation marks and ellipses omitted) (quoting *Williams v. Schultz*, No. 06-CV-1104 (DNH), 2008 WL 4635383, at *9 (N.D.N.Y. Oct. 16, 2008)). Here, Jack Graziano provided a detailed account of the July 21, 2015 incident to Defendant McAvoy, describing Plaintiff as having "wave[d] a knife at [my] face while standing in close proximity to [me] and [] stat[ing] to [me], in sum and substance, I'M GONNA STAB YOU, I'M GONNA KILL YOU[.]" (Exhibit H, Dkt. 53-8, at ECF 2.) In addition, when Defendant McAvoy went to the Residence on July 22, 2015 to find Plaintiff, Plaintiff had locked himself inside and was yelling at the police, *inter alia*, that "[i]f Plaintiff ha[s] to go, [the] Grazianos have to go." (Defs.' 56.1, Dkt. 52, ¶ 14; Pl.'s Depo., Dkt. 53-2, at 163:10.) Plaintiff's spontaneous statement referencing the Grazianos only confirmed that Plaintiff had been involved in an incident with the Grazianos and knew or assumed that that was why the police officers were looking for him. The veracity of the Grazianos' allegations was, therefore, corroborated by the detail of Jack Graziano's description of the event, Plaintiff's incriminating statements as he was yelling at the police, and "Defendant's observation of Plaintiff's demeanor and physical appearance," *Williams*, 2008 WL 4635383, at *10 (finding that the veracity of victim's unsworn allegations was corroborated by the fact that "[w]hen Defendant told Plaintiff to have a seat in a police car, Plaintiff (in what might be

reasonably perceived as being an argumentative fashion) said, 'I'm not getting in the f* * *ing car unless I'm handcuffed'").

Lastly, "[i]t is not unusual for police to encounter conflicting eyewitness accounts, . . . and the Second Circuit and lower courts have consistently held that the existence of such conflicting evidence does not vitiate the probable cause established by an eyewitness identification." *Creighton v. City of New York*, No. 12-CV-7454 (PGG), 2017 WL 636415, at *27 (S.D.N.Y. Feb. 14, 2017) (collecting cases); *see also Crews v. County of Nassau*, 996 F. Supp. 2d 186, 206 (E.D.N.Y. 2014) (finding that probable cause was not vitiated by contradictory witness statements); *DiStefano*, 2014 WL 349251, at *8 ("[C]onflicting accounts between a complainant and the accused do not negate probable cause" (citations omitted)); *Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y. 1998) ("Even when an arresting officer is faced with competing accounts from different eyewitnesses, an officer is entitled to make an arrest based on believing the testimony of one side or the other, as long as there is eyewitness testimony to support every element of the offense." (citation omitted)). It does not matter that "an investigation might have cast doubt upon the basis for the arrest." *Panetta*, 460 F.3d at 396 (internal quotation marks and citation omitted); *see also id.* at 395–96 ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.").

Accordingly, Defendant McAvoy had probable cause to arrest Plaintiff on July 22, 2015 for the menacing incident that had occurred between Plaintiff and the Grazianos the day before, and Plaintiff's false arrest claim against Defendant McAvoy must be dismissed.

## II.  Unlawful Search/Entry

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "A search within the meaning of the Fourth Amendment of the U.S.

Constitution 'occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.'" *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 465 (S.D.N.Y. 2014) (quoting *Maryland v. Macon*, 472 U.S. 463, 469 (1985)), *aff'd*, 835 F.3d 248 (2d Cir. 2016).

### A. November 6, 2014 Search of Plaintiff's Vehicle

Plaintiff asserts that Defendant Diaz "unlawfully searched [his] car"[7] on November 6, 2014 (Complaint, Dkt. 2, at ECF 4), after responding to McNee's 911 call about Plaintiff breaking the door to her Residence. Plaintiff asserts that Defendant Diaz found a knife in his car and placed it on his person. (Pl.'s Br., Dkt. 57, at 1.) Plaintiff claims to have "testimony of [his] mother and [himself]," and, at trial, plans to produce the knife that was on his person and "prove [that] officer Diaz placed [the knife] in [his] vehicle by testing it for [Diaz's] DNA and fingerprints." (*Id.*) However, Plaintiff has produced no such evidence or any other evidence to support his unlawful search claim. The only evidence in the record supporting this claim is Plaintiff's own deposition testimony that, after Plaintiff refused to allow Defendant Diaz to search his car, Defendant Diaz "took the keys anyway and went in the car and searched the car." (Pl.'s Depo., Dkt. 53-2, at 133:15–18.) "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is [] insufficient" to defeat a properly supported motion for summary judgment. *Risco*, 868 F. Supp. 2d at 99 (citations omitted). There is otherwise no evidence that Defendant Diaz or any other officer searched Plaintiff's car on November 6, 2014; rather, the only competent evidence establishes that Plaintiff's person was searched after he was arrested and handcuffed by the officers and that a knife was recovered from his pants pocket during the search of his person. (*See* Exhibit C, Dkt. 53-3; Exhibit G, Dkt. 53-7.) Therefore, Plaintiff's unlawful search claim

---

[7] Plaintiff does not assert that the search of his person was unlawful. (*See* Complaint, Dkt. 2, at ECF 4; Pl.'s Br., Dkt. 57, at 1–2.)

against Defendant Diaz must be dismissed.

### B.      July 22, 2015 Entry into the Residence

Plaintiff also asserts an unlawful search claim based on Defendant McAvoy's entry into the Residence on July 22, 2015. (Pl.'s Br., Dkt. 57, at 2–3.) Defendants argue that Plaintiff did not have an expectation of privacy in the Residence and that the entry was reasonable under the emergency aid doctrine. (Defs.' Br., Dkt. 54, at 10–12.)

#### 1.      Expectation of Privacy

"In order for Fourth Amendment protections against unreasonable searches and seizures to apply, a plaintiff must show that the area in question is one in which the plaintiff enjoys a 'reasonable expectation of privacy.'" *Marchand v. Simonson*, 16 F. Supp. 3d 97, 116 (D. Conn. 2014) (citation omitted). "[I]t has long been recognized that a person may claim a legitimate expectation of privacy in a dwelling other than his own." *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016). While "an 'overnight guest' can legitimately expect privacy in his host's home[,] . . . 'overnight' status is not a precondition to a guest's ability to contest a search of his host's dwelling." *Id.* (quoting, *inter alia*, *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)). "In determining whether a guest who is not an 'overnight guest' may legitimately expect privacy in his host's home," courts consider

> whether the guest's visit was social or commercial in nature, the length of time the guest spent on the premises, [] the presence or absence of a previous connection between the guest and the householder[,] . . . whether the guest possesses a key to the dwelling, is permitted to make use of the premises in the householder's absence, or keeps belongings in the host's home.

*Id.* at 109 (citing, *inter alia*, *Minnesota v. Carter*, 525 U.S. 83, 90–91 (1998), and *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997)). The ultimate inquiry is "whether the host has so liberally shared his own privacy interest with his guest that it shelters the guest against unreasonable government intrusion." *Id.*

15

Defendants argue that Plaintiff was not a "lawful tenant or resident" of the Residence and thus had no expectation of privacy in it on July 22, 2015.  (Defs.' Br., Dkt. 54, at 12.)  In support of that argument, Defendants offer only Plaintiff's deposition testimony stating that he was not living at the Residence on July 22, 2015.  (Pl.'s Depo., Dkt. 53-2, at 154:11–25.)  However, as discussed, "[a] person need not 'reside' in a particular dwelling, in the sense of living primarily at that location, to enjoy a legitimate expectation of privacy when he is on the premises." *Figueroa*, 825 F.3d at 109 (citation omitted).  Based on this fact alone, the Court cannot conclude that Plaintiff had no expectation of privacy as a matter of law.

Plaintiff asserts several facts that could support his expectation of privacy in the Residence on July 22, 2015.  He claims that "the [Residence] belong[s] to [Plaintiff's] grandma, [his] mother resides there, and all three of [his] vehicles are parked on this property[,] along with most of [his] belongings stored in the house," and that "the owner[, *i.e.*, his grandmother] direct[ed] [him] to enter the home on 7/22/15[.]"[8]  (Pl.'s Br., Dkt. 57, at 3.)  In addition, it is undisputed that Plaintiff was present at the Residence on both July 21 and 22, 2015.[9]  (*See* Defs.' 56.1, Dkt. 52, ¶¶ 8, 11; Pl.'s Depo., Dkt. 53-2, at 155:3, 155:9 (stating that Plaintiff was "working on one of the cars" "in the driveway" of the Residence on July 21, 2015); Pl.'s Depo., Dkt. 53-2, at 157:25–158:3 ("As soon as [Plaintiff] woke up, [he] called [Steven Graziano] and [] told him . . . [']Come by yourself

---

[8] Defendants argue that Plaintiff cannot contradict his deposition testimony by asserting that he was living at the Residence on July 22, 2015.  (*See* Defs.' Reply, Dkt. 58, at 7.)  However, Plaintiff does not assert that he was residing there, but instead proffers other facts illuminating his connection to and relationship with the Residence.  (*See* Pl.'s Br., Dkt. 57, at 3.)  It is permissible for *pro se* Plaintiff to clarify ambiguous or incomplete deposition testimony by his submissions.  *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004); *see also Genao*, 2008 WL 190605, at *1 n.1.

[9] It is also undisputed that Plaintiff was at the Residence eight months earlier, on November 6, 2014, when he was arrested by Defendant Diaz.  (Defs.' 56.1, Dkt. 52, ¶¶ 1–3.)

and we will fight in the middle of the street[.']"); Pl.'s Depo., Dkt. 53-2, at 158:4–9 ("When [Steven Graziano] got home from work at 4:00, you hear motorcycles and all this stuff. . . . My grandmother opens the door and starts yelling before they get in the front of the house[.]").)

Plaintiff has adduced sufficient evidence to create a triable issue of fact regarding his expectation of privacy in the Residence on July 22, 2015. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that, at a minimum, on July 22, 2015, the owner of the Residence, Plaintiff's grandmother, had accepted Plaintiff "into the private sphere of the household." *Figueroa*, 825 F.3d at 110. The factors in *Figueroa* weigh strongly in favor of Plaintiff: (1) his visits to the Residence were social in nature; (2) it is reasonable to infer that he spent a great deal of time there, in light of the fact that the arrests in November 2014 and July 2015 both occurred at the Residence; (3) he had a familial relationship with the owner and the tenant of the Residence; and (4) he kept most of his belongings and his cars there.

Therefore, Defendants have not established, as a matter of law, that Plaintiff did not enjoy an expectation of privacy in the Residence.

## 2. Emergency Aid Doctrine

"A warrantless entry into an individual's home is reasonable if . . . the officers reasonably believe it is necessary to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 381 (S.D.N.Y. 2013) (internal quotation marks and additional citations omitted) (quoting, *inter alia*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)); *see also United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." (quoting *Brigham City*, 547 U.S. at 403)). "[T]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to

render aid or take action." *Simmons*, 661 F.3d at 157 (internal quotation marks and citation omitted). This "objective" test "turns on the totality of the circumstances." *Id.* (internal quotation marks and citation omitted). Courts "must be cognizant of the Supreme Court's admonition that 'exceptions to the warrant requirement are few in number and carefully delineated and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.'" *Loria v. Gorman*, 306 F.3d 1271, 1284–85 (2d Cir. 2002) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984)).

Here, in justifying the warrantless entry into the Residence on July 22, 2015 under the emergency aid doctrine, Defendants rely on the fact that Plaintiff was designated as an EDP by the police officers who first arrived on the scene, and that Plaintiff had locked himself inside the Residence for two hours following an altercation with the neighbors and was yelling out of the window at times during the incident.[10] (Defs.' Br., Dkt. 54, at 11.) However, viewed in their totality, these circumstances would not lead a reasonable officer to believe that there was an urgent need to render aid or take action.

In cases where courts have applied the emergency aid doctrine, additional facts supported the objective reasonableness of the warrantless entry. *See*, *e.g.*, *Cruz v. City of New Rochelle*, No. 13-CV-7432 (LMS), 2017 WL 1402122, at *11–13 (S.D.N.Y. Apr. 3, 2017); *Soller v. Boudreux*, No. 12-CV-167 (SJF) (SIL), 2015 WL 500492, at *12 (E.D.N.Y. Feb. 3, 2015); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 382 (S.D.N.Y. 2013); *Sha v. N.Y.C. Police Dep't Twentieth Precinct, Detectives, Officers Soe*, No. 03-CV-5273 (DAB) (GWG), 2005 WL 877852,

---

[10] Although Defendants also rely on Plaintiff's medical records and deposition testimony showing that he had a history of previous hospital visits of a similar nature (Defs.' Br., Dkt. 54, at 11), the Court does not consider this evidence, because Defendants provide no evidence demonstrating that the officers, at the moment of entry on July 22, 2015, had any knowledge of Plaintiff's prior hospital visits.

at *5 (S.D.N.Y. Apr. 18, 2005). In *Cruz*, the police were told that the plaintiff had mental health issues and was no longer taking his medication, and the officers were instructed by the hospital to bring the plaintiff in. 2017 WL 1402122, at *11–13. In *Chamberlain*, the police were told that the plaintiff had not responded to a medical alert, and they witnessed the plaintiff "speaking as if to another [non-existent] person." 986 F. Supp. 2d at 382. The police were also aware that the plaintiff had been involved in several prior EDP calls. *Id.* In *Soller*, the police officers had information that two elderly people had not been seen for over a week and lived in "bad conditions" in their home, and no one responded when the officers knocked on the door to the residence for twenty minutes. 2015 WL 500492, at *12. In *Sha*, the 911 call "provided sufficient indic[i]a of reliability for the police to believe that a medical emergency existed" involving a woman with a history of brain injury and seizures. 2005 WL 877852, at *5.

Here, by contrast, the evidence shows only that Defendant McAvoy knew that there had been an altercation between Plaintiff and Jack and Steven Graziano that day (Pl.'s Depo., Dkt. 53-2, at 179:1–6), that Plaintiff had threatened the Grazianos with a knife the day before (Exhibit H, Dkt. 53-8, at ECF 2; Pl.'s Depo., Dkt. 53-2, at 164:5–8), that Plaintiff was refusing to speak with the officers and had locked himself inside the Residence for two hours (Pl.'s Depo., Dkt. 53-2, at 159:21–160:12, 160:24–161:3), and that Plaintiff was yelling out of the window (Defs.' 56.1, Dkt. 52, ¶ 20). Notably, there is no evidence in the record indicating that the officers knew who else was inside the Residence with Plaintiff[11] or that the officers had any reason to believe that Plaintiff posed a threat of harm to himself[12] or anyone else inside the Residence. There is also no evidence

---

[11] Indeed, Plaintiff claims that no one else was in the Residence with him at the time of the stand-off on July 22, 2015 (Pl.'s Br., Dkt. 57, at 2), and Defendants offer no contrary evidence.

[12] Defendants argue in their reply that Plaintiff conceded that he was a danger to himself in his opposition. (*See* Defs.' Reply, Dkt. 58, at 6.) However, read liberally, Plaintiff's opposition brief does not concede that point, but rather emphasizes the fact that Plaintiff could not harm

that the alleged victims of Plaintiff's menacing, the Grazianos, were in any danger at that time. Even though Defendants argue that the officers who first arrived on the scene had "designated" Plaintiff an EDP, Defendants do not provide any evidence regarding the basis for that designation, nor evidence that Defendant McAvoy had any information, apart from the other officers' EDP "designation," about Plaintiff having mental health diagnoses or issues. (Pl.'s Depo., Dkt. 53-2, at 168:1–8.)

Defendants correctly point out that "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception, and the court must refrain from replacing the objective inquiry into appearances with a hindsight determination that there was in fact no emergency." (Defs.' Br., Dkt. 54, at 10–11 (quoting *Soller*, 2015 WL 500492, at *12).) However, the officers' "objectively reasonable belief must be based on more than speculation." *Pennington v. City of Rochester*, No. 13-CV-6304 (FPG), 2018 WL 3023383, at *4 (W.D.N.Y. June 18, 2018). Defendants have not provided sufficient evidence at this stage showing, as a matter of law, "an objectively reasonable basis for believing [] that a person within the house [was] in need of immediate aid . . . ." *See Soller*, 2015 WL 500492, at *12 (internal quotation marks and citation omitted). Here, a reasonable jury could find that no such basis existed at the time of the warrantless entry into the Residence by Defendant McAvoy on July 22, 2015.

Thus, viewing the evidence in the light most favorable to Plaintiff, the Court finds that the information known to Defendant McAvoy and the other officers on July 22, 2015 was insufficient to provide an objectively reasonable basis for a warrantless entry, and that Defendants, therefore, have failed to show that they are entitled to judgment as a matter of law with respect to the entry

---

anyone else. (*See* Pl.'s Br., Dkt. 57, at 2 ("In fact, being the only person in the home meant only I could hurt myself, but after three hours of the stand[]off and still not a danger to myself, it was evident that police entry was for the sole purpose of making an arrest . . . .").)

into the Residence that day.  *See Bah v. City of New York*, No. 13-CV-6690 (PKC), 2017 WL 435823, at *5 (S.D.N.Y. Jan. 31, 2017) (denying defendants summary judgment on unlawful entry claim, where "[o]fficers arrived in response to a radio call related to an EDP, were told by [plaintiff's] mother that [plaintiff] was not violent, . . . knocked on [plaintiff's] apartment door[,]" and when plaintiff "opened the door[,] . . . the officers observed that he was naked, his eyes had a blank stare and were open wider than normal, and he was holding a knife in one hand[,]" followed by plaintiff "clos[ing] the door, which the officers unsuccessfully attempted to prevent him from doing").

3.    Qualified Immunity

Courts have an obligation to determine the applicability of a qualified immunity defense at the earliest stage of the litigation.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("[The Supreme Court] repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (internal quotation marks and citation omitted)).  "Qualified immunity will attach to an officer's decision to enter a dwelling in response to perceived exigent circumstances so long as the 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[A] government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 255 (2d Cir. 2014) (internal quotation marks and alteration omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

In *Kerman*, the Second Circuit found that an anonymous 911 call describing "a mentally

ill man at this location [who] was off his medication and acting crazy and possibly had a gun" did not give rise to an exigency sufficient for a warrantless entry. 261 F.3d at 232. Relying on *Kerman*, the court in *Bah* found that similar facts "could support a finding that the officers violated clearly established law by making warrantless entries into Bah's apartment without more evidence that he was a danger to himself or others." *Bah*, 2017 WL 435823, at *5. Here, as discussed above, the record, viewed in the light most favorable to Plaintiff, establishes that Defendant McAvoy was told of an altercation between Plaintiff and his neighbors that had already ended, and then Plaintiff locked himself inside what appeared to be his home, refusing to come out or to be taken to the hospital or arrested. Under these circumstances, a reasonable officer "would have understood," *Abrams*, 764 F.3d at 255, that there was no exigency—such as Plaintiff presenting a danger to himself or others—to justify warrantless entry into the Residence, and that the officers, by doing so, were violating Plaintiff's Fourth Amendment right.

Defendants argue that a reasonable officer could have believed there was a sufficient basis to designate Plaintiff as an EDP, relying on "(1) [the officers'] observations of Plaintiff once they arrived at [the Residence], (2) their conversations with the complain[ants], the Grazianos, and (3) the multiple 911 calls regarding the altercations[.]" (Defs.' Br., Dkt. 54, at 17.) However, Defendants do not provide any evidence describing Defendant McAvoy's or any other officers' observations of Plaintiff's demeanor and behavior, their conversations with the witnesses (other than the debriefing of the Grazianos about the knife incident the day before), or the contents of any 911 calls. The only description of the events of July 22, 2015 from the perspective of the police in the record is contained in a police report prepared by a police officer, Edward Fogarty. (Exhibit J, Dkt. 53-10, at 3–5.) Fogarty described "a barricaded E.D.P. with a knife" and a phone

call between Plaintiff and Fogarty[13] on July 22, 2015, in which Plaintiff stated that he was not in the Residence and would not "surrender to be evaluated unless his neighbor was also evaluated." (*Id.*) The police report does not explain why Plaintiff was designated as an EDP, nor does it, standing alone, establish that, in entering the Residence without a warrant, Defendant McAvoy acted upon an objectively reasonable belief that Plaintiff was an EDP who presented a danger to himself or others inside the Residence. Therefore, based on the record, Defendants have not shown that Defendant McAvoy is entitled to qualified immunity, as a matter of law, with respect to his warrantless entry into the Residence on July 22, 2015.

Accordingly, the Court denies the motion for summary judgment with respect to Plaintiff's unlawful entry claim.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motion for summary judgment. Only Plaintiff's July 22, 2015 unlawful search claim against Defendant McAvoy survives summary judgment. All other claims are dismissed, and Defendant Diaz is terminated as a party to this action. The parties shall file their portion of the Joint Pretrial Order ("JPTO") that complies with the Court's Individual Rules within thirty (30) days of the date of this Memorandum & Order.[14]

---

[13] The DD5 report notes that Fogarty was at the Residence in response to a report of a barricaded EDP with a knife. (Exhibit J, Dkt. 53-10, at 3–5.)

[14] Given Plaintiff's *pro se* status, each side shall separately submit their portion of the JPTO, rather than submitting a jointly prepared JPTO. Defendant McAvoy's JPTO submission should comply with the requirements of Section 4(A) of the Court's Individual Rules, and Plaintiff shall use best efforts to comply with those requirements.

SO ORDERED.

/s/ *Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: March 30, 2020
       Brooklyn, New York