UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
THOMAS ANTHONY SANTAGATA, JR.,

                Plaintiff,

           - against -

DETECTIVE JOHN DIGREGORIO,
DETECTIVE MICHAEL MARKLE,
DETECTIVE FREDRICK MOREIRA,
LIEUTENANT SCOTT SWEENEY, and
DETECTIVE NICHOLAS SCIANNA,

                Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-3053 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

Plaintiff Thomas Anthony Santagata, Jr., proceeding *pro se*, brings this action, pursuant to

42 U.S.C. § 1983, against Defendants Detectives John DiGregorio, Michael Markle, Fredrick

Moreira, and Nicholas Scianna, and Lieutenant Scott Sweeney of the New York City Police

Department ("NYPD"), alleging unlawful entry into a residence where Plaintiff was located.

Currently before the Court is Defendants' motion for summary judgment.  For the reasons stated

below, Defendants' motion is granted, and this case is dismissed.

## BACKGROUND

I.    **Plaintiff's Failure to Provide a Compliant 56.1 Statement**

The Eastern District of New York's Local Rule 56.1(b) requires that

> [t]he papers opposing a motion for summary judgment . . . include a
> correspondingly numbered paragraph responding to each numbered paragraph in
> the statement of the moving party, and if necessary, additional paragraphs
> containing a separate, short and concise statement of additional material facts as to
> which it is contended that there exists a genuine issue to be tried.

E.D.N.Y. Local Rule 56.1(b).  "*Pro se* litigants who receive proper notice pursuant to Local Civil

Rule 56.2 are not excused from satisfying their obligations under Local Civil Rule 56.1." *Cain v.*

*Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016) (citation omitted), *aff'd sub nom. Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8 (2d Cir. 2018).

Here, though Defendants provided notice under Local Rule 56.2 (*see* Notice, Dkt. 98), Plaintiff did not provide the required 56.1 Statement.  Defendants therefore ask that the Court deem the facts contained in Defendants' 56.1 Statement admitted.  (Defendants' Reply ("Defs.' Reply"), Dkt. 99, at 3.)  The Court declines to do so.

As the Second Circuit has advised:

> A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.  Thus, we have previously indicated, and now hold, that while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citations omitted); *cf. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").

Although Plaintiff has failed to comply with Local Rule 56.1(b), he did provide his own factual account of the case, as well as a Reply including his counterarguments to Defendants' summary judgment arguments.  (*See generally* Plaintiff's Brief ("Pl.'s Br."), Dkt. 57; Plaintiff's Response, ("Pl.'s Resp."), Dkt. 90.)  Given Plaintiff's *pro se* status, the Court will "examine the record to determine whether there are any triable issues of material fact, notwithstanding the fact that [Plaintiff] did not follow Local Civil Rule 56.1."  *Cain*, 182 F. Supp. 3d at 63; *see Thigpen v. Bd. of Trs. of Local 807 Labor-Mgmt. Pension Fund*, No. 18-CV-162 (PKC) (LB), 2019 WL 4756029, at *1 (E.D.N.Y. Sept. 29, 2019) (declining to deem defendants' 56.1 statement admitted when plaintiff "provide[d] her own factual account of the case and attached numerous, non-

duplicative exhibits"); *see also Holtz*, 258 F.3d at 73 ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." (internal citations omitted)). "To the extent [Plaintiff's] submission contains facts based on personal knowledge or otherwise admissible evidence, those facts will be considered in conjunction with the instant motion." *Genao v. Avon Salon & Spa*, No. 06-CV-3667 (RWS), 2008 WL 190605, at *1 n.1 (S.D.N.Y. Jan. 16, 2008).

## II.   Relevant Facts[1]

### A.  Plaintiff's July 22, 2015 Arrest

On July 21, 2015, Plaintiff had an altercation with Jack and Steven Graziano (father and son), who lived across the street from the house located at 3 Cascade Street, Staten Island, in which Plaintiff's mother and grandmother, Lillian McNee, resided in separate apartments ("the Residence"). (*See* Plaintiff's Deposition, ("Pl.'s Depo."), Dkt. 53-2, at ECF[2] 14; April 11, 2016

---

[1] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement or *pro se* Plaintiff's factual submission denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statements or Plaintiff's submission incorporates by reference the documents cited therein, if any. Where relevant, however, the Court may cite directly to the underlying document. The Court has deemed facts averred in a party's 56.1 statement or factual submission to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent that a party's 56.1 statement or factual submission "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party], without specifically controverting those facts[,]" the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

[2] "ECF" refers to the pagination generated by the electronic court filing system, or ECF, not the document's internal pagination.

Hearing Testimony ("Exhibit A"), Dkt. 96-1, at ECF 32.)  At the time of the altercation, Plaintiff was carrying a knife.  (*Id.* at ECF 21.)

The next day, July 22, 2015, Plaintiff was in another altercation with the Grazianos.  (*Id.*)  As a result, numerous 911 calls were made, and police officers, responding to the calls, arrived at the Residence.  911 callers gave differing accounts of the circumstances that caused them to call 911.[3]  Officers Louise Sanfilippo and Tamar Uster, the responding officers, were told by dispatch to respond to a "dispute" at 3 Cascade Street.  (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 95, ¶ 1; Exhibit A, Dkt. 96-1, at ECF 53.)  They responded to the intersection of Cascade Street and Hunter Avenue "looking for this dispute," and found Steve Graziano standing outside.[4]  (Exhibit A, Dkt. 96-1, at ECF 7–8.)  When the officers engaged him, John Graziano "came out of his house to tell [the officers] that that was his son," and that "that wasn't the issue that was being called for[.]"  (*Id.* at ECF 7.)  Jack Graziano also told the officers that he and/or his son "had an ongoing issue with someone who lived in the house at 3 Cascade."[5]  (*Id.* at ECF 8.)  Officers Sanfilippo and Uster then rang the doorbell of the Residence, and were invited inside by Plaintiff's

---

[3] For example, an NYPD investigative memorandum related that Jason Roquez, resident of 5 Cascade Street, "called 911 because he observed a motorcycle gang circle Santagata along with other neighbors who he named as Jack and Steve.  He stated that the group then broke up and fled the scene before police arrived."  (Pl.'s Resp., Dkt. 90, at ECF 6; *see also* April 12, 2016 Hearing Testimony, Ex. B, Dkt. 96-2, at ECF 23.)  Responding Officer McAvoy testified that another neighbor reported witnessing Plaintiff "menace Jack Graziano with a knife" on July 22, 2015.  (Ex. A, at ECF 61.)

[4] Although Officer Sanfilippo does not identify the Grazianos by name in her initial testimony, she does identify them as Steven and Jack Graziano on cross-examination.  (Dkt. 96–1 at ECF 16–17.)

[5] Officer Sanfilippo's testimony is unclear as to whether the father told the officers that he himself, his son, or both had the ongoing issue with Plaintiff.  (Exhibit A, Dkt. 96-1, at ECF 8 ("And they – the father was speaking, not the son, that he had an ongoing issue with someone who lived in the house at 3 Cascade.").)

grandmother, Ms. McNee.  (Defs.' 56.1, Dkt. 95, ¶¶ 2–3.)  Plaintiff was in Ms. McNee's living room with her, "pacing" and "tapping his head" when the officers arrived.  (*Id.* ¶¶ 4–5.)  The officers stepped outside of the house with Ms. McNee in order to speak with her, at which point Plaintiff locked himself inside the Residence.  (*Id.* ¶¶ 6–7.)

Officers Sanfilippo and Uster called for backup, designating Plaintiff as an "emotionally disturbed person."  (*Id.* ¶ 8.)  Plaintiff refused to come out of the Residence for approximately two hours.  (Defendants' April 5, 2019 56.1 Statement, Dkt. 52, ¶ 18.)  Officer McAvoy spoke with Ms. McNee, who related to him that Plaintiff was allowed to "basically . . . go anywhere in the house."  (Exhibit A, Dkt. 96-1, at ECF 57.)  Detective Fogarty, an NYPD Hostage Negotiator, was called to the scene by the Chief of Detectives, who told him that there was a man who had "barricaded himself inside . . . with a knife."  (Defs. 56.1, Dkt. 95, ¶ 12.)  While outside of the Residence, Detective Fogarty established phone contact with Plaintiff via a call from Plaintiff's sister's phone.  (Dkt. 96-1, at ECF 33–34.)  During that call, which lasted approximately five minutes, Plaintiff said that he would only come out if he was not under arrest, and would only go to the hospital if the Grazianos also had to go to the hospital.  (Pl.'s Depo., Dkt. 53-2, at ECF 18; Exhibit A, Dkt. 96-1, at ECF 28–51.)

Members of NYPD's Emergency Services Unit ("ESU"), including Defendants DiGregorio, Markle, Moreira, Sweeney, and Scianna, were summoned to the scene in response to a "barricaded perp brandishing a knife at neighbors."  (Defs. 56.1, Dkt. 95, ¶ 14.)  At some point, Defendants removed Plaintiff from the Residence and placed him under arrest.  (*Id.* ¶ 15.)

There is no evidence in the record that any of the 25 to 30 officers on scene during the approximately two hours Plaintiff was locked inside the Residence observed Plaintiff with a knife or threatening himself or others.  There is also no evidence in the record regarding who made the

5

decision that Defendants should breach the front door to the Residence, at what point that decision was made, what was communicated to the decisionmaker(s) about Plaintiff and his behavior, and what Defendants observed while on scene.

### III.   Procedural History

On April 12, 2017, Plaintiff commenced this *pro se* action against the City of New York ("City"), the NYPD, NYPD Officers Edgardo Diaz and Ryan McAvoy, and the Legal Aid Society, in the United States District Court for the Southern District of New York.  (Compl., Dkt. 2.)  By Order dated May 15, 2017, the case was transferred to this Court.  (May 15, 2017 Transfer Order, Dkt. 4.)  On July 11, 2017, the Court *sua sponte* dismissed Plaintiff's claims as to the City, NYPD, and the Legal Aid Society, but allowed Plaintiff's claims for false arrest, unlawful search, and intentional infliction of emotional distress against Defendants Diaz and McAvoy to proceed.  *See Santagata v. City of New York*, No. 17-CV-3053 (PKC) (CLP), 2017 WL 2963453 (July 11, 2017).  On July 20, 2017, Plaintiff filed a letter motion to amend his complaint, seeking to name Steven Wasserman, a Legal Aid Society attorney, as a defendant.  (Plaintiff's Letter Motion to Amend Complaint, Dkt. 11.)  The Court denied the motion to amend on October 6, 2017.  (Oct. 6, 2017 Memorandum & Order, Dkt. 19.)  At a pre-motion conference on March 9, 2018, the Court denied Defendants' motion to dismiss on the record, allowing Plaintiff to proceed with his claims against Defendants Diaz and McAvoy for false arrest/false imprisonment, unlawful search, and malicious prosecution, and dismissed Plaintiff's claim for intentional infliction of emotional distress.  (*See* Mar. 9, 2018 Minute Entry.)  Defendants Diaz and McAvoy filed their answer on March 23, 2018.  (Answer, Dkt. 28.)  The parties then proceeded to discovery.  (*See* May 22, 2018 Minute Entry, Dkt. 32.)  On May 17, 2019, the Court denied Plaintiff's second letter motion to amend his complaint (May 17, 2019 Memorandum & Order, Dkt. 61), in which he asserted new claims

against the City and New York State (Mar. 14, 2019, Plaintiff's Second Letter Motion to Amend Complaint, Dkt. 49). Plaintiff filed an interlocutory appeal with respect to the Court's May 17, 2019 Memorandum & Order. (Notice of Interlocutory Appeal, Dkt. 62.) That appeal was dismissed by the Second Circuit for failure to either pay the filing fee or move for *in forma pauperis* status. (Sept. 9, 2019 Order of United States Court of Appeals for the Second Circuit, Dkt. 63.)

Defendants' first motion for summary judgment was fully briefed on April 5, 2019. (*See* Dkts. 51–60.) On March 30, 2020, the Court granted Defendants' motion for summary judgment with respect to all of Plaintiff's claims except for his unlawful search claim against Defendant McAvoy; Defendant Diaz was terminated as a defendant. (Mar. 30, 2020 Memorandum & Order, Dkt. 66.) Defendants submitted their proposed pre-trial order on July 29, 2020 (Dkt. 70), followed by Plaintiff's September 3, 2020 Proposed Pretrial Order (Dkt. 71). At the subsequent Initial Pretrial Conference, the Court ordered Defendant to file and serve on Plaintiff a letter identifying the police officers who had entered the Residence on July 22, 2015, and Plaintiff was ordered to follow with a letter indicating which officers he would like to add to the Complaint. (*See* Dec. 3, 2020 Minute Entry.) On March 6, 2021, Defendants filed a status report identifying the officers (Dkt. 76), which Plaintiff followed with a letter dated March 31, 2021, identifying the name of the officers he intended to add to the Complaint and the factual allegations as to each newly-added defendant (Dkt. 77). On April 12, 2021, the Court issued an order, based on Plaintiff's March 31 letter, amending the complaint by withdrawing all claims against Officer Ryan McAvoy and adding unlawful search claims against Detective John DiGregorio, Detective Michael Markle, Detective Fredrick Moreira, Lieutenant Scott Sweeney, and Detective Nicholas Scianna. (Apr. 12, 2021 Order Amending Complaint.)

At a status conference held on July 23, 2021, the Court ordered that further discovery, including depositions of the newly-added police officer defendants, would be held in abeyance pending resolution of Defendants' pre-motion conference request related to their anticipated motion for summary judgment. (Dkt. 86.) On October 1, 2021, a pre-motion conference was held where a summary judgment briefing schedule was set. (Oct. 1, 2021 Minute Entry.) Plaintiff entered his reply in opposition to Defendant's summary judgment motion on January 12, 2022. (Pl.'s Resp., Dkt. 90.) On March 15, 2022, Defendants filed their summary judgment motion, reply to Plaintiff's opposition, and supporting materials. (First Motion for Summary Judgment, Rule 56.1 Statement, Declaration and Memorandum in Support of Defendants' Motion for Summary Judgment, and Reply in Support of Defendants' Motion, Dkts. 94-101.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial "burden of establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (*per curiam*) (citation omitted). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of

evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks, citation, and alterations omitted).  In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (cleaned up).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  The Court also construes any disputed facts in the light most favorable to the non-moving party.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  *See also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).  Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Defendants seek summary judgment as to the sole remaining claim in this matter, the unlawful entry claim, which Defendants assert is barred due to collateral estoppel, qualified

immunity, and the statute of limitations.  Because the Court finds that collateral estoppel disposes of Plaintiff's unlawful entry claim, the Court declines to resolve Defendants' qualified immunity and time-bar arguments.

## I.    Collateral Estoppel

"Under 28 U.S.C. § 1738 a federal court must, in according full faith and credit, give to a State court judgment the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was rendered." *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996).  "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).[6]  This includes findings of fact and law in State court criminal matters that are relevant to §1983 claims.  *Allen v. McCurry*, 449 U.S. 90 (1980) ("nothing in the legislative history of §1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings".)  "Under New York law, collateral estoppel will preclude a federal court from

---

[6] As a threshold issue, although "ordinarily, collateral estoppel must be raised as an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure," *see Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001), courts may decide to apply it when, as here, it was raised at summary judgment.    *See Charter Oak Fire Ins. v. Electrolux Home Products, Inc.*, 882 F. Supp. 2d 396, n.4 (E.D.N.Y. 2012) (deciding to rule on a collateral estoppel argument raised by defendant who waited "nearly two years (after discovery was complete) to first raise the issue" in support of a summary judgment motion.); *Hoy v. Incorporated Village of Bayville*, 765 F. Supp. 2d 158, 166 (E.D.N.Y. 2011) ("A court may dismiss a claim on *res judicata* or collateral estoppel grounds on . . . a motion for summary judgment") (citing *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)).    Further, the Second Circuit has explained that ensuring the party against whom collateral estoppel is asserted is given notice and opportunity to respond to the argument is "the primary purpose of requiring collateral estoppel to be pled as an affirmative defense" and, where such notice and opportunity is given, it is sufficient reason not to prohibit a collateral estoppel defense at the summary judgment stage.  *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003) (citing *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)).  Plaintiff has received notice of Defendants' collateral estoppel argument and has had ample opportunity to oppose it.

deciding an issue if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Livingston v. Escrow*, 637 F. App'x. 45, 46 (2d Cir. 2016) (quoting *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007)). "Additionally, the issue that was raised previously must be decisive of the present action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (internal citation and quotation marks omitted). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[,] . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues." *Constantine v. Teachers College*, 448 F. App'x. 92, 93 (2d Cir. 2011) (ellipsis in original) (quoting *Evans v. Ottimo*, 469 F.3d 278, 281–82 (2d Cir. 2006)).

## II.     Plaintiff is Collaterally Estopped From Bringing His Unlawful Entry Claim

Defendants argue that because Plaintiff "fully and fairly litigated" the lawfulness of the NYPD's entry into the Residence during the State court criminal prosecution that followed Plaintiff's July 22, 2015 arrest, he is collaterally estopped from relitigating the same "issue of fact or law" in federal court. (Defendants' Memorandum in Support of Summary Judgment ("Defs.' Memo. of Law"), Dkt. 97, at 5.) At a suppression hearing in Plaintiff's state court criminal case, Judge Wayne Ozzi found that both exigency and consent existed at the time the officers entered the Residence. (Dkt. 96-3 ("Exhibit C").) As Defendants note, Plaintiff was represented at the suppression hearing by counsel, who called and cross-examined witnesses and subsequently submitted a memorandum of law in support of Plaintiff's suppression motion. (Defs.' Memo. Of Law, Dkt. 97, at 7.) Therefore, Defendants argue, the unlawful entry question was decided in the prior criminal action and is dispositive of Plaintiff's present § 1983 civil unlawful entry claim. (*See id.* at 5–8.)

In his Reply, Plaintiff contends that the suppression hearing "was not a 'full' nor 'fair opportunity'" to contest Defendants' entry into the Residence. (Pl.'s Resp., Dkt. 90, at ECF 2.) Plaintiff bases this argument on what he perceives to be his former attorney's failure to call additional witnesses at the suppression hearing. First, Plaintiff alleges that his "public defender refused to call [his] grandmother as a witness for the *Payton* hearing, saying her contradictory testimony about the officers saying they had entered the home lawfully was not probative." (*Id.* at ECF 1.) Plaintiff argues that he would have called Ms. McNee "to rebut or corroborate the officer's implied consent," (*id.* at ECF 2), which the Court liberally construes to reflect his belief that Ms. McNee's testimony would have contradicted any claim by the NYPD that Ms. McNee consented, either explicitly or implicitly, to law enforcement's entry into the Residence on July 22, 2015. Second, Plaintiff argues that he should have "been given the opportunity to call . . . the handful of witnesses that were next to [his] grandmother seated outside the home when speaking to officers." (*Id.*)[7]

In their Reply, Defendants largely reiterate their collateral estoppel argument that Plaintiff was the beneficiary of a "full and fair opportunity to litigate" the unlawful entry question at his State court suppression hearing. (Defs.' Reply, Dkt. 99, at 4.) They also contend that Plaintiff misunderstood Judge Ozzi's suppression hearing conclusion with respect to exigency. (Defs.' Reply, Dkt. 99, at 4.)[8] Finally, Defendants argue that Plaintiff's theory that he was denied a "full

---

[7] Plaintiff also sought the testimony of additional civilian witnesses in his Complaint, where he alluded to the existence of "five 911 callers" who would have been able to attest to the fact that "[he] was the victim of the menacing." (Pl.'s Depo., Dkt. 53-2, at ECF 25.)

[8] Plaintiff asserts that Judge Ozzi "impl[ies] there was no exigency" when he writes "[e]ven assuming exigent circumstances did not exist." (Pl.'s Resp., Dkt. 90, at 1 (citing May 14, 2016 Decision & Order, Dkt. 96-3, at 10).) Defendants argue that this phrase does not actually imply that Judge Ozzi did not believe that exigency existed, but was instead arguing that *even if it did*

and fair opportunity to litigate" because Ms. McNee was not called as a witness amounts to a non-viable §1983 claim against his attorney.  (*Id.* at 5.)

Because the undisputed facts establish the two elements of Defendants' collateral estoppel defense—*i.e.*, "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding," *Livingston*, 637 F. App'x. at 46 (internal quotation marks omitted)—Plaintiff is barred from re-litigating the issue of unlawful entry in this case.

## A.    Identity of Issues

The first element is plainly met here.  The specific issue being litigated in this case with respect to Plaintiff's unlawful entry claim is identical to one of the issues previously litigated in Plaintiff's State court suppression hearing.  In order for Plaintiff to succeed on his §1983 unlawful entry claim against Defendants, he must prove that there was no exigency or consent that justified the law enforcement officers' warrantless entry into the Residence on July 22, 2015.  That is precisely the issue that Judge Ozzi had to decide in the suppression hearing, in which he found that the NYPD officers' "warrantless entry into the [Residence] was permissible" in light of exigent circumstances, and, "even assuming exigent circumstances did not exist, the police were given permission to enter the home."  (May 14, 2016 Decision & Order, Dkt. 96-3, at 9–10.)  Thus, the issue of whether Defendants' warrantless entry into the Residence on July 22, 2015 was justified was "actually and necessarily decided" in the State court criminal matter.

## B.    Full and Fair Opportunity to Litigate

The Second Circuit has explained:

---

*not*, the police were justified in entering the Residence without a warrant because they were given consent to do so.  (Defs.' Reply, Dkt. 99, at 4.)

> [i]n determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that "the various elements which make up the realities of litigation," should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.

*Curry*, 316 F.3d at 332 (ultimately quoting *Schwartz v. Public Adm'r of Bronx Cnty.*, 24 N.Y.2d 65, 72 (1969)).

Plaintiff "has the burden of establishing the absence of a full and fair opportunity to litigate the issues." *Constantine*, 448 F. App'x. at 93–94. It is a difficult burden to carry where the issue in question was previously the subject of a suppression hearing. *See John v. Lewis*, Nos. 15-CV 5346, 15-CV-6853 (PKC), 2017 WL 1208428, at *10 (E.D.N.Y. Mar. 31, 2017) ("It is abundantly clear that Plaintiff had a full and fair opportunity to litigate the issues . . . during his State court suppression hearing."); *see also United States v. Shaw*, No. 16-CR-642 (RJS), 2017 WL 1380598, at *4 (S.D.N.Y. Apr. 13, 2017) ("the Second Circuit has also instructed that 'a prior decision by another court on a motion to suppress is not ordinarily reconsidered in the absence of substantial new evidence or extraordinary circumstances.'" (quoting *Laaman v. United States*, 9073 F.2d 107, 113 (2d Cir. 1992) (collecting cases)). Plaintiff was represented by counsel at the two-day hearing, where counsel called one witness, cross-examined three witnesses called by the State, and was permitted afterwards to submit briefing in support of Plaintiff's suppression motion. (*See* 96-1, 96-2, at ECF 33). Plaintiff also had a clear and significant incentive to fully litigate the issues at the suppression hearing, given that an adverse ruling would have allowed the felony case to proceed against him and for him to be convicted of the charged crime. (*See* Certificate of Disposition, Dkt. 96-5.) *Stevenson v. City of Chicago*, 638 F. Supp. 136, 141 (N.D. Ill. 1986) ("Because of the potentially serious consequences of a felony conviction, a defendant in a criminal

proceeding has ample incentive to fully litigate Fourth Amendment issues in the suppression hearing in hopes of excluding potentially damaging evidence.").  Plaintiff also had the opportunity, post-conviction and sentencing, to appeal the adverse suppression hearing decision, which he, in fact, did.  *People v. Santagata*, 152 N.Y.S.3d 857 (App. Div. 2021);  *see* N.Y. C.P.L. § 710.70.2 ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty); *cf. Shaw*, 2017 WL 1380598, at *5 (finding that because "[d]efendant had the opportunity to obtain review of the [suppression hearing] decision, and failed to seek such review, he was precluded from relitigating the constitutionality" of the issue in question);*Pinkney v. Keane*, 920 F.2d 1090, 1096 (2d Cir. 1990) ("Rather, failure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable 'as a matter of law.'").

However, the existence of a prior opportunity to litigate does not always support the application of collateral estoppel.  "Although collateral estoppel jurisprudence generally places termination of litigation ahead of a correct result, there are some circumstances that so undermine confidence in the validity of an original determination as to render application of the doctrine impermissibly 'unfair' to a defendant."  *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979), *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1487 (2d Cir. 1995)).  Where there are "procedural opportunities unavailable in the first action that could readily cause a different result," or where the non-moving party is deprived of a "constitutional right to a jury trial," collateral estoppel might not apply.  *Bouchard Transp. Co., Inc. v. Long Island Lighting Co.*, 807 F. App'x. 40, 43–44 (2d Cir. 2020).  The same can be true where there is "an intervening material change in

15

the law." *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, Nos. 14-CV-10102, 15-CV-10033 (KPF) (SN), 2022 WL 2702616, at *10 (S.D.N.Y. Jul. 12, 2022).

As discussed, Plaintiff contends that he was denied a "full and fair opportunity to litigate" by his attorney, who failed to call various witnesses whom Plaintiff claims would have helped him establish that the officers' entry was unlawful.  Specifically, Plaintiff appears to claim that his grandmother would have been able "to rebut" the NYPD officers' claim that Plaintiff's grandmother had given explicit or "implied consent" to the officers' entry into the Residence. (Pl.'s Resp., Dkt. 90, at ECF 2.)  He also argues that he should have been able to call "the handful of witnesses that were next to [his] grandmother seated outside the home when speaking to officers," presumably because they would also have been able to testify as to whether his grandmother consented to the officers' entry into the Residence, and possibly as to whether any exigency existed.  (*Id.*)

Although Plaintiff may have a plausible argument that his attorney would have been wise to call these witnesses at the suppression hearing, that they were not called cannot be used to undermine the State court finding's preclusive effect in the present action.  Defendants are correct that Plaintiff's complaint as to his attorney would be non-viable as a § 1983 claim.  Legal Aid Society attorneys do not act under color of state law when they perform traditional functions of counsel and are therefore not suable under 42 U.S.C. § 1983.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Sash v. Rosahn*, 450 F. App'x 42, 43 (2d Cir. 2011)  (affirming summary judgment in defendant's favor because a court-appointed attorney from the Legal Aid Society did not act under color of state law when representing a client).  Additionally, insofar as Plaintiff's complaint is that his counsel in the

16

state suppression hearing was ineffective such that Plaintiff was deprived of a full and fair opportunity to litigate the question of unlawful entry, that argument is unavailing.  In the habeas context, the Second Circuit has found that "[w]here petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure[,] . . . courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown" of the available State process of the sort that would make federal review appropriate.  *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) (citing *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir. 1986)).  Courts in this circuit consequently have held that an allegation of ineffective assistance of counsel cannot bar the application of collateral estoppel principles to a claimant's Fourth Amendment claims.  *See*, *e.g.*, *Brown v. De Fillipis*, 717 F. Supp. 172, 179 (S.D.N.Y. 1989).  Other district courts have similarly rejected ineffective assistance challenges in non-habeas cases like this one.  *See*, *e.g.*, *Williams v. Jamison*, No. 5:17-CV-156 (BJB), 2022 WL 2717639, at *3 (W.D.Ky. Jul. 13, 2022) ("Even if the Kentucky trial court hadn't already decided this issue against [Defendant], no caselaw indicates that a pending ineffective-assistance claim shows a party previously lacked a full and fair opportunity to litigate. 'If a direct appeal is no bar to collateral estoppel, it logically follows that a [collateral attack] is also not a bar to collateral estoppel.'"  (emphasis omitted) (quoting *SEC v. Durham*, No. 11-CV-370 (JMS), 2017 WL 3581640, at *7 (S.D. Ind. Aug. 18, 2017))).

Additionally, even if the ineffective assistance claims advanced by Plaintiff are considered on their merits, they fail to undermine Defendants' collateral estoppel argument.  *See Carvalho v. Stevens*, No. 12-CV-128 (LTS) (FM), 2013 WL 3742532, at *5 (S.D.N.Y. Jul. 17, 2013) (finding that Plaintiff's allegations as to the ineffectiveness of her counsel in an underlying state Family Court proceeding, including allegations that her counsel missed several court appearances, failed

17

to call supportive witnesses, and failed to refute contrary testimony, "do not rise to the level of ineffectiveness that is indicative of denial of a full and fair opportunity to litigate" (citing *Richards v. City of New York*, No. 97-CIV-7990 (MBM), 2003 WL 21036365 (S.D.N.Y. May 7, 2003))); *cf. Velez v. Reynolds*, 325 F. Supp. 2d 293, 310–11 (S.D.N.Y. 2004) (finding no full and fair opportunity to litigate where plaintiff was entirely unable to testify at trial because she was on trial in a concurrent proceeding, and where counsel "failed to take any action or make any argument whatsoever").  "In this circuit, the decision to call or refrain from calling particular witnesses 'cannot form the basis for a claim of [ineffective assistance of counsel]' because of the 'tactical' nature of this decision, which courts are loathe to second-guess."  *United States v. Wint*, No. 12-CR-85 (JGM) (JMC), 2017 WL 1901674, at *8 (D.Vt. Feb. 3, 2017) (*report and recommendation adopted*, *U.S. v. Wint*, No. 12-CR-00085 (JGM), 2017 WL 1900284 (D.Vt. May 9, 2017)) (quoting *Brown*, 717 F. Supp. at 180 (citing *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987), *cert denied*, 484 U.S. 958 (1987))); *see also Gatto v. Hoke*, 809 F. Supp. 1030, 1038 (E.D.N.Y. 1992) (explaining in habeas context that attorney's decision not to call petitioner as witness could not constitute ineffective assistance of counsel).  Therefore, Plaintiff's claim that he was deprived a full and fair opportunity to litigate because of his lawyer's decision not to call his grandmother and other neighbors to testify at his suppression hearing cannot defeat Defendants' collateral estoppel defense with respect to Plaintiff's § 1983 claim for unlawful entry.

Although Plaintiff does not raise the fact that Defendants were not the officers whose conduct was at issue in the State court suppression hearing, the Court considers this issue in light of Plaintiff's *pro se* status and because the identity of the parties is one of various "elements which make up the realities of litigation."  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001) (quoting *Schwartz*, 24 N.Y.2d at 72). "Collateral estoppel generally does

18

not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding

be the same parties they litigate against in the current proceeding." *Swiatkowski v. Citibank*, 745

F. Supp. 2d 150, 168 (E.D.N.Y. 2020) (citing *United States v. Mendoza*, 464 U.S. 154, 158 (1984));

*Ralin v. City of New York*, No. 15-CV-2978 (KAM) (ST), 2017 WL 4357417 (E.D.N.Y. Sept. 30,

2017) ("[T]he doctrine of collateral estoppel precludes relitigation of identical issues, regardless

of whether the defendants named in the later litigation are the same as those named in the earlier

case."). However, collateral estoppel can be found inapplicable in subsequent litigation involving

a different defendant "where the facts and circumstances known to each defendant [differ]."

*Armatas v. Maroulleti*, No. 08-CV-310 (SJF) (RER), 2010 WL 4340437, at *19 (E.D.N.Y. Oct.

19, 2010) (*report and recommendation adopted*, *Armatas v. Maroulleti*, No. 08-CV-310 (SJF)

(RER), 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010); *Weiss v. Hotung*, 26 A.D.3d 855, 856 (N.Y.

App. Div. 2006).

Still, Plaintiff fails to create a triable issue of material fact as to whether the ESU officers

who are Defendants in this action had a different understanding of the "facts and circumstances"

from that of the officers who were found at the suppression hearing not to have unlawfully entered

the Residence, so as to support an unlawful entry claim against Defendants. Whether a police

officer acted based on exigency or consent, like determinations of probable cause, is evaluated

objectively based on what the officer knew when he or she acted. *See Devenpeck v. Alford*, 543

U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (*except for

the facts that he knows*) is irrelevant to the existence of probable cause.") (emphasis added); *see

also Florida v. Jimeno*, 500 U.S. 248, 250 (1991) ("The standard for measuring the scope of . . .

consent under the Fourth Amendment is that of 'objective' reasonableness[.]"); *Kentucky v. King*,

563 U.S. 452, 460 (2011) (Unlawful entry claims are assessed under an "objective reasonableness"

19

standard under the Fourth Amendment.).  Plaintiff simply has not developed the record since the suppression hearing.  Indeed, Plaintiff makes no allegations specific to the ESU officers in his Reply to Defendants (Pl.'s Resp., Dkt. 90), and offers no evidence as to Defendants' knowledge or beliefs regarding their reasons to enter the Residence on July 22, 2015.

Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's unlawful entry claim on the basis of collateral estoppel.

## III.   Qualified Immunity and the "Fellow Officer Rule"

Since this case is being dismissed on collateral estoppel grounds, the Court does not rule as to Defendants' qualified immunity and statute of limitations arguments.  The Court, however, notes that were it to consider Defendants' qualified immunity argument, the Court would find it unavailing.  Defendants argue that they are entitled to qualified immunity based on the "fellow officer rule" (also known as the "collective knowledge doctrine" or "imputed knowledge rule"), which provides that, "even if the law enforcement officer actually conducting the search lacks the relevant facts to support probable cause, the search may nonetheless be permissible if the officer acted on the assessment or instructions of other officers who did have such facts."  *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017).

Here, Defendants maintain that the fellow officer rule permitted them "to rely upon the information supplied by the officers who [had] responded" to the scene earlier, in making the warrantless entry into the Residence.  (Defs. Memo. of Law, Dkt. 97, at 10.)  However, the Second Circuit interprets the rule differently than some other circuits, to require that the fellow officers actually communicate the information relied upon by the officer seeking to benefit from the rule. *United States v. Hussain*, 835 F.3d 307, 316 n.8 (2d Cir. 2016) ("[W]e decline to extend the collective knowledge doctrine to cases where, as here, there is no evidence that an officer has

communicated his suspicions with the officer conducting the search, even when the officers are working closely together at a scene."). Thus, in order to avail themselves of the fellow officer rule, Defendants must adduce evidence establishing that information was actually shared among the officers and what that information was. Defendants, however, have failed to do so. The only evidence they offer regarding the ESU officers' knowledge is an after-action report describing the call for service as a response to a "barricaded perp brandishing a knife at neighbors." (Dkt. 96-4, at ECF 4; Defs. 56.1, Dkt. 95, at 3:14.) No other information gleaned by the responding officers (Officers Sanfilippo and Uster), Officer McAvoy, Detective Fogarty, or any other officer on the scene before and/or during Defendants' time there—including observations regarding Plaintiff's mental state and whether consent to enter the Residence had been given—can be attributed to the Defendants without evidence that it was actually communicated to them. While evidence could of course be introduced demonstrating that Defendant ESU officers themselves observed circumstances or were sufficiently briefed by officers with firsthand knowledge of the scene that would justify forced entry, no such evidence has been proffered by Defendants in connection with their summary judgment motion. Thus, even if the Court were to consider Defendants' qualified immunity argument at this stage of the proceeding, it would deny summary judgment on that basis and/or order supplemental briefing regarding evidence supporting that defense.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment. Plaintiff's unlawful entry claim, the sole remaining claim in this action, is dismissed.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  March 23, 2023
        Brooklyn, New York